CC-1999-79                                              1

En el Tribunal Supremo de Puerto Rico

| Lourdes Cuevas Santiago<br>        Recurrida<br><br>               V.<br><br>Ethicon Division of Johnson & Johnson<br>Professional Company of Puerto Rico,<br>Inc.<br>        Peticionaria | Certiorari<br><br>99 TSPR 107 |
|---|---|

Número del Caso: CC-1999-0079

Abogados de la Parte Peticionaria: Lcdo. Alfredo M. Hopgood Jovet
                                   Lcdo. Luis R. Amadeo Carrón

Abogados de la Parte Recurrida:    Lcdo. Frank Zorrilla Maldonado

Tribunal de Instancia, Sala Superior de Caguas

Juez del Tribunal de Primera Instancia: Hon. Héctor Cordero Vázquez

Tribunal de Circuito de Apelaciones, Circuito Regional VI Caguas-Humacao

Juez Ponente: Hon. Ortiz Carrión

Fecha: 6/30/1999

Materia: Despido Ilegal

        Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correciones del
    proceso de compilación y publicación oficial de las
    decisiones del Tribunal. Su distribución electrónica se hace
    como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lourdes Cuevas Santiago

        Demandante

                v.                    CC-1999-79      Certiorari

Ethicon Division of Johnson
& Johnson Professional
Company of Puerto Rico, Inc.

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 30 de junio de 1999.

¿Cuándo comienza a discurrir la reserva de empleo dispuesta en la Ley de Compensaciones por Accidentes del Trabajo? ¿Desde la fecha del accidente o desde que el Fondo le ordena tratamiento en descanso al empleado?

Resolvemos que conforme la letra clara del Articulo 5a de la Ley de Compensaciones por Accidentes del Trabajo el periodo de reserva comienza a discurrir a partir de la fecha del accidente.

I.

La Sra. Lourdes Cuevas Santiago comenzó a trabajar para Ethicon, Division of Johnson &

Johnson Professional Co. (en adelante "Ethicon") mediante contrato de empleo probatorio en junio de 1994. En octubre del 1996 la señora Cuevas sufrió un accidente en el trabajo. En noviembre del mismo año Ethicon la refirió a la Corporación de Fondo del Seguro del Estado (en adelante "el Fondo"), a partir de ese momento la señora Cuevas estuvo en tratamiento mientras continuaba trabajando ("CT"). Sin embargo, la condición de la empleada se agravó y el 20 de junio de 1997 el Fondo le ordenó descanso. Dos meses más tarde en agosto el Fondo dispuso que la señora Cuevas podía continuar su tratamiento mientras trabajaba por lo que la demandante se reintegró a su trabajo.

**Un mes más tarde en septiembre el Fondo le ordenó nuevamente a la señora Cuevas que recibiera su tratamiento en descanso hasta el 2 de diciembre. El 2 de diciembre ella solicitó reinstalación a su trabajo y Ethicon le indicó que la reserva de empleo que dispone el Articulo 5a de la Ley de Compensaciones por Accidentes del Trabajo, había expirado.**

Así las cosas, ella presentó, ante el Tribunal de Primera Instancia, demanda por despido ilegal y discriminatorio. Posterior a la presentación de la contestación a la demanda, la señora Cuevas presentó Moción de Sentencia Sumaria Parcial y/o Moción de Sentencia por las

Alegaciones, a la cual se opuso Ethicon, solicitando, a su vez, que se dictara sentencia sumaria a su favor.

El Tribunal de Instancia dictó Sentencia Sumaria, mediante la cual desestimó la demanda presentada. En su sentencia, el foro de instancia determinó que el término de la reserva de empleo comenzó a transcurrir desde el 10 de octubre de 1996, fecha del accidente, y terminó en octubre de 1997. Por lo tanto a la fecha en que ella solicitó reinstalación, el término de reserva había transcurrido, por lo que cesó la obligación de Ethicon de reservarle el empleo.

Inconforme, la señora Cuevas apeló ante el Tribunal de Circuito de Apelaciones. Alegó que el Tribunal de Instancia erró al concluir que, a la luz de los hechos que no están en controversia, al momento de ella solicitar su reinstalación habían transcurrido más de doce meses desde la fecha del accidente; y al concluir que Ethicon ya no tenía obligación de reservarle su empleo.

Dicho foro apelativo revocó la sentencia sumaria apelada. Determinó que a los fines de lo dispuesto por el Artículo 5a de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 7, la fecha del accidente no es la fecha del suceso que causa la inhabilidad sino la fecha en que ésta se manifiesta. Por lo tanto, cuando para el 2 de diciembre de 1997, la recurrida solicitó su reinstalación, sólo habían transcurrido poco más de cinco meses desde el momento en que se manifestó su inhabilidad para trabajar,

por lo que su solicitud de reinstalación se efectuó dentro del plazo de doce meses dispuesto como reserva de empleo en el Artículo 5a, supra.

Inconforme con las determinaciones del foro apelativo, Ethicon acude ante nos, alegando como único error lo siguiente:

> Actuó Ultra Vires el Honorable Tribunal de Circuito de Apelaciones (El "Tribunal Apelativo") al ignorar y descartar la letra clara del artículo 5a de la Ley de Compensaciones por Accidentes del Trabajo (sobre reserva de empleo) y descartar la jurisprudencia establecida por este honorable Tribunal Supremo en Torres v. Star Kist Caribe, 94 J.T.S. 5, y su progenie, al resolver que el periodo de reserva de doce meses comienza a decursar no "desde la fecha del accidente", según reza el Art. 5a, sino desde que el Fondo autoriza por primera vez a un obrero tratamiento medico en descanso. Según el honorable Tribunal Apelativo, El periodo en que el obrero recibe tratamiento médico mientras trabaja ("CT") interrumpe la reserva de empleo, lo cual conflige abiertamente con lo resuelto en Torres v. Star Kist Caribe, Supra."

Por su parte la Sra. Cuevas Santiago presentó oposición a la solicitud de certiorari, señalando la corrección de lo determinado por el Tribunal de Circuito de Apelaciones. Examinada la petición de certiorari y la oposición a la misma, y a tenor con la Regla 50 del Reglamento de este Tribunal, revocamos la sentencia recurrida sin ulteriores procedimientos.

## II.

La justificación de un despido de un empleado por razón de su incapacidad física y/o mental para realizar las funciones de su puesto, o para asistir regularmente a su empleo, no aplica en casos en que el obrero se incapacita

**temporalmente** por razón de un accidente o enfermedad ocupacional. Esta protección del obrero está reconocida en el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo. Esta ley instrumenta el derecho constitucional de todos los trabajadores en Puerto Rico a recibir protección contra riesgos para la salud e integridad personal, Art. I, Sec. 16 de la Constitución del ELA, y constituye el eje central de todo el esquema jurídico establecido por el Estado para la protección del obrero en su taller de trabajo. Véase Torres González v. Star Kist Caribe, Inc., res. el 28 de enero de 1994, 134 D.P.R.___ (1994); Delgado Zayas, Apuntes para el Estudio de la Legislación Protectora del Trabajo, págs. 187-188 (1996).

Entre las medidas que la Ley de Compensaciones por Accidentes del Trabajo establece para proteger al trabajador y viabilizar su tratamiento y cura, esta lo dispuesto en su Art. 5a. Este artículo es de carácter especial, es decir, se refiere únicamente a aquellos casos en que el trabajador sufre un accidente de trabajo o una enfermedad del trabajo que lo inhabilita. Vease, Rodríguez Rosa v. Méndez & Co., res. el 18 de marzo de 1999, 99 TSPR 23; Delgado Zayas, supra, pág. 188. Aquellos empleados que no quedan cobijados por el Art. 5a y han sido despedidos sin que medie justa causa, de ordinario, podrán reclamar bajo la ley 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185a y ss., que es de aplicación general.

El Artículo 5a específicamente dispone que:

En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

(1) Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;

(2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y

(3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)... Ley Núm. 45 del 18 de abril de 1935, Art. 5a, según enmendada, 11 L.P.R.A. sec. 7.

Anteriormente hemos establecido que este artículo contiene dos tipos de protección para el obrero inhabilitado por un accidente o enfermedad del trabajo. Por un lado obliga al patrono a reservarle el empleo al trabajador por doce meses, desde el momento en que ocurre el accidente, período durante el cual el patrono no puede despedir al empleado. Por otro lado, tan pronto como el trabajador es dado de alta por el Fondo, tiene derecho a que se le reponga en su empleo, y el patrono está obligado a reinstalarlo, siempre que se cumplan los requisitos que establece el propio artículo. Los requisitos son: (1) que el accidente o enfermedad ocupacional inhabilite al empleado para trabajar; (2) que el empleado se acoja a los beneficios del Fondo; (3)

que dentro de los quince días de haber sido dado de alta definitivamente y autorizado a trabajar por el Fondo, el empleado solicite al patrono reposición en su empleo; (4) que dicho requerimiento de reposición se haga **dentro de los doce meses de haber ocurrido el accidente o enfermedad**; (5) que al solicitar su reposición el empleado esté mental y físicamente capacitado para desempeñarse en las funciones del empleo que ocupaba; y (6) que dicho empleo subsista al momento de la solicitud de reinstalación. Véase Vélez Rodríguez v. Pueblo International, res. el 18 de marzo de 1994, 135 D.P.R. ___ (1994); Torres González v. Star Kist Caribe, supra; Carrón Lamoutte v. Compañía de Turismo, supra; Santiago v. Kodak, 129 D.P.R. 763 (1992).

También hemos reconocido que al imponerle al patrono el deber de reservarle al obrero por doce meses el empleo en que se desempeñaba al momento de ocurrir el accidente, el legislador intentó establecer un balance entre los intereses del obrero, y los del patrono. El legislador tomó en consideración la carga que podría representar para el patrono la reserva de empleo y por tal razón la limitó a sólo 12 meses a partir del accidente, entendiendo que de esta forma se lograba el balance adecuado entre los intereses económicos del patrono y la protección del trabajador lesionado. Torres González v. Star Kist Caribe, supra; Santiago v. Kodak, supra.

En el caso de autos Ethicon nos solicita que determinemos que el Art. 5a claramente dispone que el momento a partir del cual se computa el periodo de reserva

que exige el artículo, es el momento en que ocurrió el accidente. Entiéndase que el periodo de 12 meses de reserva comienza a partir del momento en que ocurre el evento que conduce a la inhabilitación.

Por su parte la señora Cuevas en su comparecencia ante nos, solicita que determinemos que en su caso el periodo de reserva comenzó en el momento en que el Fondo le ordenó descanso. Sólo existen dos interpretaciones del articulo 5a que sostendrían esta postura. Determinar que los periodos en que el Fondo ordena tratamiento mientras el obrero continúa trabajando interrumpen el periodo de reserva, o determinar que donde el legislador colocó la frase "desde la fecha del accidente", tuvo la intención de decir desde la fecha de la inhabilidad sobrevenida a causa del accidente. Ambas lecturas del artículo son insostenibles conforme los principios que rigen la interpretación judicial de las leyes. Veamos

La posibilidad de que el término de doce meses de reserva que establece el Art. 5a pudiese quedar interrumpido por los periodos en que el empleado accidentado está trabajando o regresa a trabajar mientras continúa bajo tratamiento en el Fondo (C.T.), ya fue resuelto en la negativa por este tribunal. Precisamente en Torres González v. Star Kist Caribe, supra. resolvimos que "el hecho de que un empleado, que se encuentra incapacitado temporalmente por razón de enfermedad o accidente ocupacional, regrese al trabajo mientras se encuentra en tratamiento medico bajo el F.S.E. (C.T.) no tiene el efecto de interrumpir el termino

de (12) meses que establece el Artículo 5A, *supra*. **Este periodo es uno de caducidad que no puede interrumpirse de forma alguna**". Por lo tanto, es evidente que los meses en que la señora Cuevas se encontraba recibiendo tratamiento mientras continuaba trabajando (C.T.) no interrumpe el periodo de reserva por lo que no pueden descontarse del periodo de doce meses que establece el Art. 5a.

Sin embargo, el foro apelativo no descanso en este supuesto para establecer que la señora Cuevas tenía derecho a ser reinstalada en el caso de autos. El foro apelativo en vez interpretó que la frase: "fecha del accidente" no significa la fecha del hecho causante, sino la fecha en que se manifiesta la inhabilidad resultante del hecho causante. Apoya su interpretación en el principio de hermenéutica que establece que las leyes remediales deben ser interpretadas liberalmente para lograr sus propósitos. Conforme a esta interpretación determinó que la fecha del accidente fue a mediados del año 1997 cuando por primera vez se manifestaron los efectos inhabilitantes del accidente y el Fondo le ordenó descanso y por lo tanto la solicitud de reinstalación que hiciera la señora Cuevas estaba dentro del plazo de doce meses dispuesto como reserva de empleo en el Art. 5a.

Reiteradamente hemos resuelto que por ser la Ley de Compensaciones por Accidentes del Trabajo un estatuto remedial debe interpretarse liberalmente a favor del obrero. Santiago v. Kodak, supra; Maisonet Felicié v. Corp. Fondo del Seguro del Estado, res. el 30 de diciembre de 1996, 142 D.P.R. ___ (1996); Vélez, Admor. v. Comisión Industrial, 91

DPR 480, 485; Feliciano Figueroa v. Comisión Industrial, 84 DPR 196, 215 (1961); véase además, Agosto Serrano v. FSE, 132 D.P.R. 866 (1993); Beauchamp v. Holsum Bakers of P.R. 116 D.P.R. 522 (1985).

Sin embargo, hemos sido igualmente enfáticos al establecer que "cuando la ley es clara y libre de toda ambigüedad la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Articulo 14 del Código Civil, 31 L.P.R.A. sec. 201; Alejandro Rivera y Otros v. ELA, res. el 10 de abril de 1996, 140 D.P.R. ___ (1996); Atlantic Pipe Corp. v. F.S.E., 132 D.P.R. 1026 (1993); Santiago v. Kodak, supra; Silva Rodríguez v. Adm. de Sistemas de Retiro, 128 D.P.R. 256 (1991); Rojas v. Méndez & Co., 115 D.P.R. 50, 53 (1984); Cabán Méndez v. FSE, 115 D.P.R. 1, 3 (1983).

Así mismo hemos reconocido que cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa. Alejandro Rivera y otros v. E.L.A., supra; Silva Rodríguez v. Adm. De Sistemas de Retiro, supra; Atiles, Admor. v. Comisión Industrial, 77 D.P.R. 16, 20 (1954).

Nos señalan Bernier y Cuevas Segarra, en su obra Aprobación e Interpretación de las Leyes de Puerto Rico, 2da. edición, Publicaciones JTS, 1987, pág. 299, que "[b]ajo un sistema de separación de poderes como el que funciona en Puerto Rico, la Asamblea Legislativa tiene la facultad de aprobar las leyes. El Poder Judicial ejercitado por los

tribunales consiste en el ejercicio de las facultades de resolver los litigios a través de la interpretación de la ley. En el desempeño normal de sus funciones, los tribunales están obligados a respetar la voluntad legislativa aunque los magistrados discrepen personalmente de la sabiduría de los actos legislativos. Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la Rama Judicial de las prerrogativas de la Rama Legislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable." Véase además, Rodríguez Díaz v. Autoridad de Teléfonos de P.R., res. el 29 de mayo de 1998, 98 TSPR 62; y Alejandro Rivera v. ELA, supra. Por lo tanto, "[s]i el lenguaje de un estatuto es tan inequívoco que postula un solo significado, un sentido cabal de humildad y autodisciplina requiere la aplicación de la voluntad legislativa". Alejandro Rivera v. ELA, supra. Véanse además, Cotto Guadalupe v. Dept. de Educación, res. el 15 de junio de 1995, 138 D.P.R. ___ (1995); Atlantic Pipe Corp. v. FSE, supra y Clínica Juliá v. Sec. De Hacienda, 76 D.P.R. 509, 520 (1954).

Conforme a estos reconocidos principios de interpretación analizamos el Art. 5a y encontramos que el legislador al establecer la fecha al partir del cual habría de contabilizarse la reserva escogió la fecha en que ocurrió el accidente.[1] La letra de la ley es clara e inequívoca y no

---

[1] En la Ley de Compensaciones por Accidentes del Trabajo el legislador también utiliza la fecha en que ocurre el

tenemos evidencia de que la intención del legislador haya sido otra. El Art. 5a fue adicionado a la Ley de Compensaciones por Accidentes del Trabajo mediante la Ley Núm. 48 de 18 de abril de 1950, Leyes de Puerto Rico, 1949-1950, pág. 127, el periodo de reserva dispuesto en esta ley era de 6 meses a partir de la fecha del accidente. En marzo del 1971 se presentó un proyecto de ley que proponía que la reserva de empleo no tuviese límite de tiempo, pero la misma no fue aprobada. Vol. 25, Diario de Sesiones de la Asamblea Legislativa, 1971, pág. 644. El 5 de junio de 1973 el legislador enmendó el Art. 5a para entre otras cosas aumentar el periodo de reserva de seis (6) a doce (12) meses. Del Informe Conjunto de las Comisiones del Trabajo y Asuntos del Veterano y Gobierno de la Cámara de Representantes del 6 de abril de 1973, Vol. 27, Diario de Sesiones de la Asamblea Legislativa, 1973, pág. 1034, surge que;

> [e]l propósito de la medida es aumentar el término de seis a doce meses, **después de la fecha del accidente**, para solicitar reposición en el empleo que ocupaba originalmente. También requiere del patrono que no cumpla con las disposiciones del aludido Artículo 5A, el pago al obrero o empleado o a sus beneficiarios, de los salarios que éste hubiere devengado de haber sido reinstalado además de los daños y perjuicios que se le haya ocasionado. (énfasis nuestro)

Por otro lado, hemos observado que cuando el legislador interesa que una reserva de empleo comience a discurrir a partir de que surge la incapacidad lo ha expuesto

---

accidente como el momento para determinar si el patrono esta o no asegurado por el Fondo, y por ende le cobija la inmunidad patronal. 11 L.P.R.A. sec. 28.

expresamente. Véase Ley de Protección Social por Accidentes de Automóviles, Ley Núm 45 de 1987, 9 L.P.R.A. sec. 2054(B) y la Ley de Seguro por Incapacidad No Ocupacional Temporeras, Ley Núm 139 de 1968, según enmendada, 11 L.P.R.A. sec. 203(q).

Como mencionáramos anteriormente, el legislador al establecer la reserva de empleo intentó lograr un balance entre los intereses del obrero, y los del patrono. Por ende, de entenderlo procedente, corresponde a la Asamblea Legislativa y no a este Tribunal enmendar la Ley de Compensaciones por Accidentes del Trabajo para que la reserva de empleo corra a partir de la inhabilidad sobrevenida por el empleado luego de ocurrido el accidente. Siendo clara la disposición de la ley y libre de toda ambigüedad, la misma es la expresión por excelencia de la intención legislativa por lo que debemos rechazar la interpretación que hiciera el Tribunal de Circuito de Apelaciones en este caso.

Aunque simpatizamos con la situación de la señora Cuevas, es la Asamblea Legislativa quien debe determinar si se enmienda este artículo, luego de considerar todos los factores envueltos incluyendo el impacto económico para el patrono y el bienestar de los empleados[2].

---

[2] Cabe señalar que el hecho de que la reserva que provee el Art. 5a discurre a partir de la fecha del accidente o enfermedad ocupacional, cumple con la finalidad de que el obrero acuda prontamente y sin temor a ser despedido ante el Fondo para comenzar su proceso de recuperación. El que la reserva comience a partir de la inhabilidad decretada por el Fondo podría tener el efecto perjudicial de que el obrero

## III.

Conforme a los hechos incontrovertidos de este caso al momento en que la señora Cuevas solicita ser reinstalada ya habían transcurrido los 12 meses de reserva de empleo que el legislador fijó en el Art. 5a para su reposición, ante estas circunstancias es forzoso concluir que el patrono no violó el Art. 5a al despedir a la señora Cuevas.

Procede, por lo tanto, revocar la decisión del Tribunal de Circuito de Apelaciones y reinstalar la del Tribunal de Primera Instancia, por ser la correcta en derecho.

Se dictará la Sentencia correspondiente.

Federico Hernández Denton
Juez Asociado

postergue la decisión de acudir al Fondo a recibir tratamiento hasta que se agrave su salud.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lourdes Cuevas Santiago

    Demandante

        v.                 CC-1999-79     Certiorari

Ethicon Division of Johnson
& Johnson Professional
Company of Puerto Rico, Inc.

SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 1999.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente Sentencia, se revoca la Sentencia emitida por el Tribunal de Circuito de Apelaciones y se reinstala la del Tribunal de Primera Instancia desestimando la demanda.

    Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión Disidente.

                            Isabel Llompart Zeno
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

```
                              *
                              *
Lourdes Cuevas Santiago       *
                              *
     Demandante-Recurrida      *           Certiorari
                              *
                              *
          vs.                 *           CC-1999-79
                              *
                              *
Ethicon Division of Johnson   *
& Johnson Professional         *
Company of Puerto Rico, Inc.   *
                              *
     Demandado-Recurrente       *
                              *
                              *
* * * * * * * * * * * * * * * **
```

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI

San Juan, Puerto Rico, a 30 de junio de 1999.

"When it comes to the development of a *corpus juris*, the ultimate question is what do the dominant forces of the community want and do they want it hard enough to disregard whatever inhibitions may stand in the way."

    OLIVER WENDEL HOLMES

"Las leyes se hacen por los hombres y se interpretan por los hombres. Por eso, en su interpretación, debe ser factor preeminente la realidad humana de la vida, no la abstracción de reglas inmutables... En esta época de justicia social, debemos marchar hacia la humanización de la justicia y el derecho, dejando atrás en su decadencia rigorista el sentido dogmático del derecho y la justicia."

    LUIS NEGRÓN FERNÁNDEZ

En el caso de autos, la recurrida sufrió un accidente en el trabajo el 10 de octubre de 1996. Sin embargo, no fue hasta el 20 de junio de 1997 que la condición de la recurrida se agravó a tal extremo que la inhabilitó para continuar trabajando. El 2 de diciembre de 1997, la recurrida                                                  solicitó

la reinstalación en su empleo, pero su patrono se lo denegó, aduciendo para ello que la reserva de empleo de doce (12) meses que dispone el Artículo 5a de la Ley de Compensaciones por Accidente del Trabajo ya había expirado.

Una mayoría del Tribunal convalida la acción del patrono por entender que el período de doce (12) meses aludido transcurrió a partir de haber ocurrido el accidente referido el 10 de octubre de 1996; y que la fecha en que la trabajadora se inhabilitó --el 20 de junio de 1997-- no es pertinente al calcular el período de doce (12) meses de la reserva de empleo dispuesta por ley.

**Disiento** de este dictamen por las razones que expreso a continuación.  Veamos.


I

El Artículo 5a  referido, 11 LPRA sec. 7, provee una protección al empleado **que se inhabilita para trabajar.**  Así se dispone expresamente en la primera oración de dicho Artículo, en la cual se define precisamente el ámbito de la protección laboral que el Artículo establece.  Preceptúa esa primera oración del Artículo 5a que:

> "En los casos de inhabilitación para el trabajo,... el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente...".

Surge palmariamente de lo anterior que el elemento central que activa la protección referida es específicamente **la inhabilidad para trabajar**.  Es precisamente porque del accidente laboral el empleado ha resultado tan lesionado que tiene que ausentarse del trabajo, que se le ofrece al empleado la protección del Artículo 5a.  **La inhabilidad para trabajar es, pues, la razón de ser de la reserva de empleo que establece dicho Artículo 5a.**

Visto el claro propósito de la disposición referida, los otros párrafos del Artículo 5a – los otros asuntos que allí se preceptúan – tienen que ser interpretados en armonía con dicho propósito central,

razón de ser de esta disposición.  Reiteradamente hemos resuelto que "las leyes deben interpretarse y aplicarse a tono con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano cuya solución persiguen, como parte de un todo coherente y armonioso [del] ordenamiento jurídico." Pueblo v. Zayas Rodríguez, Op. de 17 de febrero de 1999, ___ D.P.R. __, 99 JTS 16; J.R.T v. A.E.E., Op. de 1 de abril de 1993, 133 D.P.R. ___ (1993), 93 JTS 49; Col. Ing. Agrim P.R. v. A.A.A., 131 D.P.R. 735, 756 (1992); Riley v. Rodríguez Pacheco, 124 D.P.R. 733 (1989); Morales v. Adm. Sistema de Retiro, 123 DPR 589, 595 (1989). Véase, también, Pueblo v. Zayas Colón, Op. de 9 de octubre 1995, 139 D.P.R. ___ (1995), 95 JTS 127. Una y otra vez hemos insistido en que, en la interpretación de un estatuto, los tribunales no deben descansar en una parte aislada de una disposición de ley, sino que deben considerar el estatuto en su totalidad, **teniendo primordialmente en cuenta el propósito del estatuto**, para así poder determinar el verdadero significado de sus cláusulas.  En innumerables ocasiones hemos resuelto que en tales casos **la obligación fundamental del tribunal es propiciar la realización del propósito que persigue la ley**.  Vázquez v. A.R.P.E, 128 D.P.R. 513 (1991); A.R.P.E. v. Rodríguez; 127 D.P.R. 791 (1991); Chase Manhattan Bank v. Mun. de San Juan, 126 D.P.R. 759 (1990); P.N.P. y P.I.P v. Rodríguez Estrada, 122 D.P.R. 490 (1988; El Vocero v. Junta de Planificación, 121 D.P.R. 115 (1988); Pacheco v. Vargas, Alcalde, 120 D.P.R. 404 (1988); Díaz Marín v. Mun. de San Juan, 117 D.P.R. 334 (1986); Cirino v. Fuentes Fluviales; 91 D.P.R. 608 (1964); Arroyo Merino v. Junta Azucarera, 1989 D.P.R. 622 (1963)

La obligación que tienen los tribunales al interpretar estatutos, de propiciar la realización del propósito que persigue la ley, es particularmente imperiosa cuando se trata de leyes de justicia social, como lo es el Artículo 5a que aquí nos concierne, **que deben ser interpretados liberalmente**, a fin de poder lograr los elevados fines que persigue el legislador. Agosto Serrano v. F.S.E., 132 D.P.R. 866 (1993); García Pagán v. Shiley Caribbean, 122 D.P.R. 193 (1988); Camacho

Rodríguez v. F.S.E., 121 D.P.R. 877 (1988); Bruno Colón v. Comisión Industrial, 109 D.P.R. 785 (1980); Villanueva Pérez v. Comisión Industrial, 109 D.P.R. 790 (1980); Alonso García v. Comisión Industrial, 102 D.P.R. 733 (1974); Torres v. González, 63 D.P.R. 964, 972 (1944).

En el caso de autos, todo lo anterior significa que, al interpretar el párrafo del Artículo 5a referido que dispone que el trabajador debe requerirle al patrono que lo reinstale en el empleo antes de transcurridos doce (12) meses desde la fecha del accidente, **dicho párrafo no debe leerse aisladamente**, sino a la luz del propósito central del Artículo 5a, para propiciar su razón de ser. Interpretado de este modo, no cabe duda de que el foro apelativo resolvió correctamente que el término de doce (12) meses comienza a transcurrir **desde que surge la inhabilidad** causada por el accidente. Ello, porque lo que el Artículo 5a persigue es precisamente proveerle protección al trabajador lesionado al quedar éste inhabilitado para trabajar por la lesión. Se le concede una reserva de empleo por doce (12) meses al trabajador cuando éste ha tenido que ausentarse del empleo por la lesión, por lo que es lógico, y conforme al espíritu del Artículo 5a referido, que el término de doce (12) meses se cuente a partir de que surja la inhabilidad. De otro modo quedaría **trunca** la protección que el legislador quiso ofrecer a los trabajadores en general, y no se lograría cabalmente el propósito claro del Artículo 5a referido.

Como bien señaló el foro apelativo, cuando ocurre un accidente laboral, lo usual y más corriente es que la condición inhabilitante surja de inmediato del suceso que la causó. Generalmente, ambos elementos se manifiestan de manera simultánea, como cuando ocurren choques, explosiones, resbalones y caídas que causan lesiones inhabilitantes inmediatas. Tal es la concepción común y corriente de lo que constituye un accidente. Sin embargo, existen circunstancias en las cuales la inhabilidad resultante de un suceso en el trabajo se manifiesta de forma paulatina o gradual. Igualmente ocurre con muchas enfermedades ocupacionales cuya inhabilidad resultante tienen un desarrollo gradual e

imperceptible durante un largo período.  <u>Así se reconoce por los especialistas en esta materia</u>.  *Véase,* Arthur Larson & Lex K. Larson, <u>Larson's Workers' Compensation Law</u>, Ed. Matthew Bender, Vol. 3, Chapter 7, a las págs. 383 – 447.  Por tal razón, es forzoso interpretar que a los fines de lo dispuesto por el artículo 5a, la fecha del accidente no es la fecha del suceso que causa la inhabilidad sino la fecha en que ésta se manifiesta.  De otro modo, el claro propósito social de la reserva de empleo del artículo 5a no se cumpliría respecto a algunos trabajadores inhabilitados.  Se les daría protección a unos trabajadores lesionados que han tenido que ausentarse del empleo por razón de su lesión, pero se les negaría a otros, lo que constituiría un patente trato desigual, sin que haya justificación alguna para ello, porque unos y otros están en la misma situación esencial, que es la de ser **trabajadores inhabilitados por una lesión**.

II

La mayoría en su opinión no ha presentado razón alguna que en los méritos justifique concederle el derecho de la reserva de empleo de doce (12) meses a los empleados cuya inhabilidad para trabajar se manifiesta de inmediato con la lesión sufrida en el empleo, a la vez que se le niega ese derecho a los que también sufren una lesión laboral pero que la inhabilidad se manifiesta más tarde.  No ha expresado la mayoría criterio sustantivo alguno que explique por qué la eminente política pública de proteger laboralmente a los trabajadores inhabilitados por lesiones en el empleo debe amparar a unos inhabilitados pero a otros no. Por el contrario, la mayoría expresa que simpatiza con la situación de la empleada en cuestión, pero aduce que se encuentra impedida de darle trato igual a todos los inhabilitados, por los términos del estatuto mencionados antes.

Esta postura de la mayoría es verdaderamente insostenible.  <u>La mayoría no presenta razón o argumento alguno que demuestre que en efecto el legislador tuvo la intención de conceder la reserva de empleo a unos</u>

trabajadores inhabilitados y a los otros no. No hay un ápice de prueba que apoye o fundamente la restrictiva interpretación literalista que la mayoría hace de un párrafo del artículo 5a referido. Tal interpretación, que por puro *fiat* le imputa al legislador el resultado patentemente injusto que la mayoría decreta en este caso, es contraria a los preeminentes principios de interpretación estatutaria aludidos antes en esta opinión.

La interpretación de la mayoría es contraria también a otro principio que hemos expresado reiteradamente. Como se sabe, todas las leyes, aun las "clarísimas", requieren interpretación. Pueblo v. Zayas Rodríguez, Op. de 17 de febrero de 1999, ___ D.P.R.____, 99 JTS 16; Vélez v. Secretario de Justicia, 115 D.P.R. 533, 544 (1984); Pueblo v. Tribunal Superior, 81 D.P.R. 763, 788 (1960). Con arreglo a esta realidad, hemos resuelto una y otra vez que "la letra de la ley no debe ser seguida ciegamente en casos que no caen dentro de su espíritu y fin." Pueblo v. Zayas Rodríguez, supra, y casos allí citados. Hemos insistido en rechazar la interpretación literalista de una ley, si a plena vista se ve que se ha cometido un error. Id. En repetidas ocasiones hemos resuelto que la literalidad de un estatuto puede ser ignorada cuando es contraria al claro propósito de la ley o inconsistente con su razón y espíritu. La literalidad de una disposición no puede prevalecer cuando el resultado de ésta no tenga sentido jurídico o dé lugar a que se le impute al legislador una intención absurda o irrazonable. Pueblo v. Zayas Rodríguez, supra; Robles v. Otero, 127 D.P.R. 190 (1991); Pueblo v. Burgos Torres, 120 D.P.R. 709 (1988); Pacheco v. Vargas, supra; Cancora Marina Inc. v. Secretario de Hacienda, 114 D.P.R. 248 (1983); Rivera Cabrera v. Registrador, 113 D.P.R. 661 (1982). Es por lo anterior que debemos concluir que, el resultado al cual la mayoría lamenta no poder llegar en este caso es uno que no es posible aquí **únicamente porque la propia mayoría no quiere llegar a él**. Existen amplios fundamentos jurídicos para sostener el resultado aludido, mucho más sólidos que el escogido por la mayoría para apoyar su constreñida postura en este caso.

La metodología decisional de hacer interpretaciones estatutarias **expansivas** es bien conocida por este Foro, que la utiliza con frecuencia. Sin hurgar mucho en nuestros numerosos precedentes en los cuales este Tribunal ha hecho interpretaciones de tal índole, cabe mencionar los siguientes casos relativamente recientes en los cuales hemos interpretado algún estatuto con liberalidad, más allá de sus estrictos términos literales: Pueblo v. Zayas Rodríguez, supra, en el cual lo hicimos para favorecer **a convictos de portación ilícita de armas cargadas**; Sahar Fatach v. Seguros Triple S, Inc., Op. de 25 de marzo de 1999, ____ D.P.R. ____, 99 JTS 46, en el cual lo hicimos para favorecer **a las compañías de seguro**; Valentín v. Housing Promoters Inc., Op. de 9 de octubre de 1998, 146 D.P.R. ____ (1998), 98 JTS 132 en el cual lo hicimos para favorecer **a los patronos**; Pueblo v. Villafañe, Contreras, Op. de 10 de octubre de 1995, 139 D.P.R.____, 95 JTS 132, en el cual lo hicimos para favorecer **a la profesión médica de Puerto Rico**. Siguiendo, pues, los múltiples precedentes que se han citado en distintas partes de esta opinión, la mayoría ciertamente pudo haber hecho una interpretación expansiva del artículo 5a referido, para hacer valer su claro propósito social, y esta vez para favorecer a empleados inhabilitados, como la del caso de autos.

Como la mayoría opta por otro proceder, para favorecer una vez más los intereses patronales a costa del bienestar de los trabajadores, yo DISIENTO.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO