# 2006 DTA 3

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE CAGUAS**
**PANEL XI**

JOSÉ F. DÍAZ ZAYAS, MARISOL DÍAZ BATALLA, Y LA SOCIEDAD
LEGAL DE GANANCIALES, COMPUESTA POR AMBOS
Demandantes-Apelantes

v.

EVANGELINA COLÓN CASTING, EN SU CARÁCTER PERSONAL Y EN SU CARÁCTER OFICIAL
COMO DIRECTORA EJECUTIVA DE LA CORPORACIÓN DE LAS ARTES MUSICALES; Y LA

CORPORACIÓN DE LAS ARTES MUSICALES
Demandados-Apelados

Núm. KLAN-05-00446

San Juan, Puerto Rico, a 7 de octubre de 2005

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Feliciano Acevedo y Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se apela oportunamente el 15 de abril de 2005 de la Sentencia emitida el 1 de marzo, archivada en autos el día 21 de marzo de 2005, por el Tribunal de Primera Instancia, Sala Superior de Caguas, en lo sucesivo (*"T.P.I."* o, *"Instancia"*).

La referida sentencia concluye que el demandante ahora apelante, señor José F. Díaz Zayas, en adelante, (*"Díaz"*) no fue despedido por la co-demandada señora Evangelina Colón Castaing, (*"Colón"*), Directora Ejecutiva de la Corporación de las Artes Musicales, (*"C.A.M."*), por razones discriminatorias de afiliación política, ni por represalia por haberse reportado al Fondo del Seguro del Estado, (*"FSE"*), sino por su desempeño en los puestos de confianza que ocupa. Díaz, a la fecha de su despido, estaba en tratamiento mientras trabajaba (CT) por el FSE. El T.P.I. declaró No Ha Lugar la demanda que Díaz, su esposa Marisol Díaz Batalla y la SLBG de ambos, habían presentado en contra de Colón y la CAM en el mes de marzo de 2002, por daños y perjuicios alegando discrimen político y represalias por accidente del trabajo.

Los Díaz, en su recurso apelativo, alegan que instancia erró en la apreciación de la prueba y del derecho aplicable, al concluir que Colón y la CAM no incurrieron en represalia contra él, por haberse reportado al FSE, al amparo de las disposiciones de la Ley Núm. 115 de 20 de diciembre de 1991, 29 L.P.R.A. 194 y siq., (*"Ley 115"*). También alegan que el T.P.I. erró en la apreciación de la prueba y del derecho aplicable al concluir que no fue discriminado por razones políticas. Tratándose de que ambos señalamientos de error expuestos y argumentados en el recurso apelativo versan sobre la apreciación de la prueba realizada por el foro recurrido, solicitamos el 26 de abril de 2005, una exposición narrativa estipulada de la prueba. El 25 de abril de 2005, la parte apelante solicitó, lo cual se autorizó el 3 de mayo de 2005, la Transcripción de la Prueba Oral la cual fuera sometida constando de

(184) folios.

La parte apelante presentó el 20 de junio de 2005 un Alegato Suplementario, sometiendo el 20 de julio de 2005, la parte apelada, su Alegato. Con el beneficio del extenso apéndice, la transcripción y las articuladas comparecencias de ambas partes, estamos en posición de resolver lo que procedemos a realizar, revocando la sentencia apelada y remitiendo a Instancia la causa para la continuación de los procedimientos. Exponemos al respecto.

## I

Las controversias que se nos presentan son de ajustado y difícil discernimiento. Ante la realidad señalada reconocemos, de partida, que es doctrina reiterada y respetada que el foro apelativo no intervendrá con la apreciación de la prueba hecha en Instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto a menos que de un análisis ponderado e integral de la prueba así se requiera. A tal respecto se ha resuelto que:

*"No intervendremos con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos a nivel de Instancia **excepto en casos en que un análisis integral de dicha prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia** que estremezca nuestro sentido de justicia; correspondiéndole al apelante, -de manera principal-, señalar y demostrar la base para ello. Lo contrario, esto es, la intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de Instancia, significará el caos y la destrucción del sistema judicial existente en nuestra jurisdicción". Pueblo v. Cabán Torres*, 117 D.P.R. 645, 648 (1986) (Énfasis suplido).

Es precisamente la señalada intranquilidad de conciencia la que nos impulsa y motiva a revocar la sentencia apelada.

Tal deber de conciencia, no se detiene en el Tribunal de Instancia, también alcanza el tribunal revisor. *Pueblo v. Carrasquillo*, 102 D.P.R. 545, 551-552 (1974). Complemento de lo anterior es que el arbitrio del juzgador de los hechos, aunque muy respetable, no es absoluto y una apreciación errónea no tiene credenciales de inmunidad ante la función revisora. Véase, *Vda. de Morales v. De Jesús,* 107 D.P.R. 826, 829 (1978).

## II

Según se trasluce de la transcripción, los documentos medulares contenidos en el apéndice y el informe de Conferencia con Antelación al Juicio, apéndice (ap.), páginas 23 a 34 y los (22) hechos estipulados por las partes, ap., págs. 26-28, las partes demarcan sus teorías, argumentaciones y presentación de prueba oral como en adelante resumimos.

Díaz comenzó a trabajar para la CAM el 26 de agosto de 1996 en el puesto (de confianza) de Director de Servicios Generales y está afiliado al Partido Nuevo Progresista (P.N.P.). Fue instalado y nombrado al puesto por la Prof. Mercedes Gómez Marrero, entonces Directora de la CAM, quien fuera nombrada por la administración del entonces gobernador, Dr. Pedro Rosselló González.

La CAM es una corporación pública que opera como entidad separada el Gobierno del Estado Libre Asociado de Puerto Rico y de sus agencias y subdivisiones políticas, conforme lo establecido la Ley Núm. 4 de 31 de julio de 1985 (18 L.P.R.A. Sec. 1165 a).

Como Director de Servicios Generales, (*"DSG"*), Díaz tenía a su cargo la supervisión y coordinación de todas las labores relacionadas con las compras, suministro, trámite de correspondencia, mensajería y personal de mantenimiento del CAM. El 6 de junio de 1997, Díaz fue nombrado Director Interino de Recursos Humanos (*"DRH"*) de la CAM, manteniéndose a su vez ocupando el puesto de DSG. Durante el mencionado año, Díaz como DRH de la CAM creó e implantó un nuevo Plan de Clasificación y Retribución que fuera sometido y

aprobado por la Oficina Central de Asesoramiento Laboral de la Administración de Recursos Humanos, ("*OCALARH*").

Durante el término en que Díaz ofreció sus servicios a la CAM, 26 de agosto de 1996 a la fecha en que fue destituido, 31 de enero de 2002, se le asignaron varias encomiendas entre ellas, miembro y secretario de la Junta de Subastas, transcripción (trans.), página 20, y Oficial de Enlace de la CAM y sus subsidiarias con la Oficina de Ética gubernamental. El expediente de personal de Díaz, apéndice, págs. 237-364, contiene varias referencias y reconocimiento a su productividad y calidad de sus servicios incluyendo designación de funciones como delegado comprador de la CAM.

En el período de seis años de la estadía de CAM en la agencia su salario mensual inicial de ($1,700.00) aumentó superando los ($4,000.00), trans. pág. 15. El expediente personal de Díaz no devela en absoluto alguna observación negativa sobre los servicios que ofreciera, todo lo contrario, destila laboriosidad en el cumplimiento de sus deberes y aumento a través de los años de los mismos.

En o alrededor del mes de junio de 2001, la Prof. Gómez renunció como Directora, siendo sustituida por la doctora Evangelina Colón Castaign, ("*Colón*") durante el mes de noviembre de 2001, quien fuera designada por la nueva Junta de Directores nombrada por la Gobernadora, Hon. Sila María Calderón. Se estipuló que Colón no está afiliada al Partido Nuevo Progresista. Como cuestión de hecho, la señora Colón sustituyó a Díaz en sus dos posiciones por los señores Luis Ramos y Mabel Lugo, afiliados al Partido Popular Democrático, trans., página 148.

Un mes antes de Colón comenzar sus labores como Directora Ejecutiva en noviembre de 2001, Díaz, durante el mes de octubre del mismo año, se había reportado ante el FSE, como consecuencia de su accidente ocupacional sufrido en la propia agencia, mientras se desempeñaba como DSG. Díaz fue sometido a tratamiento en descanso por las lesiones recibidas y se le ordenó tomar ciertos medicamentos como resultado del accidente del trabajo sufrido.

Con posterioridad, se le ordenó mantenerse en tratamiento mientras trabajaba, pero le programaron una serie de (18) terapias y visitas sucesivas a los médicos del FSE. Durante su testimonio, Díaz, trans., pág. 28, sostuvo que Colón le solicitó que tratara de conseguir las citas en las facilidades del FSE en el área metropolitana, lo que dijo intentaría aunque dudaba que lo conseguiría por ser residente de Caguas. Díaz fue despedido dos días después de entregarle a Colón un listado con las fechas de las citas médicas programadas. Díaz fue finalmente dado de alta por El FSE en marzo de 2002, trans., pág. 67.

Durante su testimonio, trans., páginas 98-159, Colón expresó que encontró en mal estado las oficinas del CAM ubicadas en la Torre Norte, Piso 11, Centro Gubernamental Roberto Sánchez Vilella en Minillas, incluyendo material no decomisado en el área de la Orquesta Sinfónica. Su testimonio puede resumirse en que despidió a Díaz por su pobre desempeño y porque perdió la confianza en él.

Las partes estipularon que aunque los dos puestos ocupados por Díaz estaban clasificados dentro del servicio de confianza, el incumbente de los mismos no formulaba ni implantaba política pública. El requirimiento de afiliación política para ejercer los deberes y responsabilidades del mencionado cargo no es uno indispensable para que su incumbente pueda realizar las tareas del puesto. Colón no realizó evaluación escrita alguna de Díaz previo a su separación de los puestos de confianza, por lo que en su expediente de personal no existe documento alguno que establezca que Díaz fuera evaluado durante su desempeño.

El primer error señalado por Díaz consiste en alegar que la CAM incurrió en represalias en su contra por haberse reportado al FSE, al amparo de las disposiciones de la Ley Núm. 115 de 20 de diciembre de 1990, 29 L.P. R.A. 194 *et. seq.*

Los hechos tienden a indicar que no le asiste la razón a Díaz en el primer señalamiento de error. Quedó establecido que Díaz se reportó durante el mes de octubre de 2001 al FSE como consecuencia de un accidente ocupacional mientras movía cierto equipo, mientras se desempeñaba como DSG. Fue sometido a tratamiento en descanso por las lesiones recibidas, ordenándosele (18) terapias físicas de lo cual informó a Colón a lo que ella le solicitó que tratara de conseguir las citas en el área metropolitana para mantenerse cerca de su lugar de empleo. Díaz le informó que trataría de realizarlo, pero que dudaba que lo lograra por ser residente de Caguas. Como antes indicado, fue despedido de su trabajo dos días después efectivo el mismo día, de entregarle un memorando a Colón donde le informaba las terapias que debía recibir. El documento esta fechado el 29 de enero de 2002, trans., págs. 29 y 30. Las terapias adicionales le fueron recomendadas el 28 de enero de 2002 por el Dr. Leslie Hernández Quiñones, quiropráctico. Las fechas para las citas fueron pautadas entre el 30 de enero de 2002 y el 11 de marzo de 2002 entre las horas de 3 y 4 p.m.

La argumentación de Díaz en este aspecto no nos convence, ya que estuvo recibiendo tratamiento mientras trabajaba por espacio de tres meses antes de ser removido de su puesto y su accidente no afectó su desempeño laboral, pues éste siguió asistiendo a su trabajo de la misma forma que lo hacia antes del accidente. Tampoco hubo alguna merma en su desempeño. Estimamos que la *"presión"* que recibiera Díaz para que cambiara sus citas médicas y sus terapias por parte de Colón no fue más allá de una *"solicitud"*, que inclusive podría ser de ayuda para Díaz, al no tener que desplazarse lejos de su centro de trabajo para recibir su tratamiento. Tampoco consideramos que hubo, como indica Díaz, violación a la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. 1., o que sea aplicable dentro de los hechos enmarcados el caso de *Cuevas v. Ethicon Div. J&J Prof. Co.*, 148 D.P.R. 839 (1999).

De otro modo, somos de opinión que Díaz fue discriminado y despedido por razones políticas.

Sobre este particular, Díaz declaró que está afiliado al Partido Nuevo Progresista, (*"PNP"*) y que fue la única persona despedida de su empleo, trans. pág. 31. Fue reclutado y nombrado como DSG el 26 de agosto de 1996, por la profesora Mercedes Gómez Marrero, (*"Gómez"*) entonces Directora Ejecutiva de la CAM, nombrada a ese puesto por la Administración del entonces gobernador Pedro Rosselló González elegido bajo la insignia del PNP.

Díaz fue sustituido en sus dos puestos por funcionarios afiliados al Partido Popular Democrático, (*"PPD"*), trans. pág. 148. Durante su incumbencia, Díaz ejerció deberes y responsabilidades en adición a sus puestos, como Delegado Comprador de la Agencia, Miembro de la Junta de Subastas y Coordinador de la Oficina de Ética Gubernamental, lo que señala su eficiencia y productividad. Su estadía en la agencia revela que recibió aumentos salariales significativos correlativos al incremento de sus deberes y responsabilidades.

Ante lo expresado, Díaz revirtió el peso de la prueba correspondiéndole al CAM probar que tuvo un motivo racional para despedirlo fulminantemente. Se adujo que las oficinas de Colón no fueron pintadas con celeridad, pero fue la propia Directora que rechazó en varias ocasiones las cotizaciones para comprar la pintura que Díaz le presentaba. También quedó establecido que Díaz nunca fue evaluado, que no existe reprimenda alguna en su expediente y no se tomaron medidas correctivas en torno al desempeño de sus funciones.

Con relación a la acción de daños por discrimen, desde *Ríos Colón v. F.S.E.*, 139 D.P.R. 167 (1995), el Tribunal Supremo reconoció, *"... la gran importancia social que tiene el proteger al servicio público de los vaivenes de la política partidista"*. El derecho a la libre asociación y la prohibición de discrimen por ideas políticas está consagrado en las secciones 1, 4, 6 y 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico que reafirmaron la supresión constitucional del discrimen político. Específicamente en *Báez Cancel v. Alcalde Municipio de Guaynabo*, 100 D.P.R. 982 (1972), el Tribunal Supremo manifestó:

*"La Sec. 1 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico prescribe en forma clara que 'no podrá establecerse discrimen alguno por motivo de raza, color, ... ideas políticas o religiosas'. La*

*proscripción del discrimen es clara y terminante. Su texto no permite distinción alguna. Quiere decir lo que dice.* **Que el Estado en ninguna de sus múltiples funciones o servicios puede discriminar contra un ciudadano por el mero hecho de ser éste negro, ateo o por sus ideas políticas.** *Cualquier otra interpretación enervaría su eficacia. Fortalecerla y no enervarla es nuestro deber, como los principales custodios de la Constitución."* (Énfasis suplido.)

La impunidad del poder se hace intolerable en casos de destituciones por motivaciones políticas, sobretodo en una sociedad tan rica en mezcla de razas y pensamientos ideológicos como la nuestra.

A ello hay que añadirle lo que con gran sabiduría y justicia, señaló nuestro Tribunal Supremo en *Amy v. Adm. Deporte Hípico*, 116 D.P.R. 414 (1985). *"El derecho a un empleo, esto es, a devengar ingresos y a tener una vida justa y decente, es un principio inalienable al hombre..."*.

En reiteradas ocasiones se ha reconocido que no cabe el discrimen público, incluyendo tanto los de confianza, los irregulares como los transitorios. *Aponte Burgos v. Aponte Silva*, res. el 7 de mayo de 2001, **2001 J.T.S. 69**; *Alberty v. Bco. Gub. de Fomento*, 149 D.P.R. 655 (1999).

En la causa de título no se superó la ausencia de motivo racional para el despido; Díaz está en el grupo protegido, de afiliciación política distinta a la del patrono, fue sustituido por dos empleados de diferente afiliación política, que resultan afin con la de la autoridad nominadora, Véase, *McCrillin v. Aut. Navieras de P.R.*, 123 D.P.R. 113, (1989).

Por lo expresado, aunque no se cometió el primer señalamiento de error, resolvemos que en el despido de Díaz medió discrimen político, por lo que se revoca la sentencia apelada y se devuelve la causa a Instancia para la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

La Juez Pesante Martínez emite voto disiente con opinión escrita.

Lcda. Laura M. Vélez Vélez
Secretaria Tribunal de Apelaciones

## VOTO DISIDENTE DE LA JUEZ
## CARMEN ANA PESANTE MARTÍNEZ – 2006 DTA 3

San Juan, Puerto Rico, a 7 de octubre de 2005

Disiento respetuosamente de la determinación de mis compañeros de Panel al revocar la sentencia apelada y por ende concluir que en el despido del apelante José Díaz medió discrimen político.

La prueba desfilada durante el juicio y a la que le otorgó credibilidad el Tribunal de Primera Instancia, demuestra que el apelante no fue despedido por razones políticas. Contrario a lo señalado en la opinión mayoritaria, la transcripción respalda el dictamen apelado. El apelante fue objeto de amonestaciones verbales y escritas con relación a la falta de cumplimiento de las órdenes impartidas por la co-apelada, sra. Colón Castaign.

Varios incidentes contenidos en el expediente ante nuestra consideración apoyan nuestro disenso y apuntan a que el apelante no cumplió con el estandar de prueba requerido en casos de discrimen político. Así también, que éste no es el caso que amerite que nos apartemos de la sabia norma de abstención judicial y de deferencia ante las adjudicaciones de los tribunales de primera instancia cuando atienden asuntos de credibilidad.

El récord refleja que cuando la Sra. Colón Castaign fue nombrada Directora Ejecutiva de la Corporación de las Artes Musicales, el apelante, por entender que ocupaba un puesto de confianza, sometió su renuncia. La Sra. Colón Castaign no se la aceptó, y le proveyó la oportunidad de demostrar con su trabajo que merecía retener su puesto. Durante el tiempo que ocupó los puestos de confianza de Director de Servicios Generales y Director Ejecutivo de Recursos Humanos, el apelante participaba periódicamente de las reuniones de "*staff*" convocadas por la apelada, reuniones en las que se discutía asuntos confidenciales y de política pública que deseaba encaminar la nueva Directora. Surge también que el propio apelante desconocía la afiliación política de la apelada, pero se imaginaba que tenía que ser del Partido Popular Democrático porque para aquel entonces dicho partido había ganado las elecciones y únicamente nombraban directores en las agencias a los afiliados a dicho partido político. Más aún, la Sra. Colón Castaign no había votado en las elecciones inmediatamente anteriores y no estaba afiliada a ningún partido político.

En apoyo a mi disenso está el hecho de que las personas que sustituyeron al apelante, una vez éste fue destituido, eran empleados de carrera cuya afiliación política al momento de sus respectivos nombramientos, desconocía la apelada. Más aún, el Presidente de la Junta de Directores de la Corporación de Artes Musicales, cuyo uno de sus distinguidos miembros era Don Luis A. Ferré, conocía de la insatisfacción y del alegado pobre desempeño del apelante y no presentó objeción a la propuesta de despedirlo de sus puestos.

A la luz de lo expuesto, considero que el apelante no estableció su caso de discrimen político. Así tampoco, nos mueve a determinar que hubo pasión, prejuicio, parcialidad o error manifiesto, razón por la cual considero que no debemos intervenir con la apreciación de la prueba y la adjudicación de credibilidad que realizara el Tribunal de Primera Instancia.

**CARMEN ANA PESANTE MARTÍNEZ**
Juez de Apelaciones