Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **ALDO J. MALDONADO MONTES**<br><br>Apelante<br><br>v.<br><br>**FASTENAL**<br><br>Apelado | KLAN202400935 | ***APELACIÓN***<br>procedente del<br>Tribunal de Primera Instancia Sala Superior de **Arecibo**<br><br>Caso Número:<br>AR2022CV02130<br>(Salón 404)<br><br>Sobre:<br>**Despido Injustificado, (Ley Núm. 80) y otros** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

Comparece ante nos, Aldo Maldonado Montes, en adelante, Maldonado Montes o apelante, solicitando que revoquemos la *"Sentencia Sumaria"* notificada por el Tribunal de Primera Instancia, Sala Superior de Arecibo, en adelante, TPI-Arecibo, el 7 de octubre de 2024. En la misma, el Foro Apelado declaró *"No Ha Lugar"* la *"Querella"* del apelante por Despido Injustificado, contra la compañía Fastenal, aquí apelado.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen del TPI-Arecibo.

**I.**

Maldonado Montes trabajó desde el año 2013 como Sale Support en la compañía WURTH.[1] Sin embargo, WURTH fue posteriormente adquirido por Fastenal, y desde el 29 de julio de 2019, el apelante trabajaba para ellos en la misma posición.[2]

---

[1] Apéndice del recurso, pág. 25.
[2] *Id.,* pág. 97.

Número Identificador

RES2024 _____

Luego de lastimarse la espalda en un accidente el 1 de abril de 2022, Maldonado Montes asistió el 4 de abril de 2022 a su médico de cabecera.[3] Además, a principios de mayo visitó el Fondo del Seguro del Estado, en adelante, FSE, en donde le indicaron porque tenía que estar fuera del trabajo del 2 de mayo de 2022 al 31 de mayo de 2022.[4] Sin embargo, más adelante, el FSE emitió otra resolución en la que entendió que Maldonado Montes podía regresar a trabajar, mientras recibía tratamiento, desde el 15 de mayo en adelante.[5]

Durante este proceso de evaluación, el apelante mantuvo comunicación con Fastenal para la tramitación de su licencia médica.[6] Entre estas gestiones, se le solicitó a Maldonado Montes que enviara en o antes del 14 de junio de 2022 las certificaciones médicas para el asunto.[7] Se le indicó, además, que de no recibir algún documento para procesar la licencia médica para la fecha señalada, se entendería que estaba renunciando voluntariamente a su trabajo.[8]

No empece a lo previamente reseñado, el apelante nunca le envió documentación alguna del FSE a Fastenal. Sin embargo, estos últimos le aprobaron en agosto del año 2022 el beneficio "Long Term Disability" a Maldonado Montes, retroactivo al mes de julio del mismo año, mediante el cual podía seguir recibiendo el sesenta por ciento (60%) de su salario,[9] hasta marzo del año 2023.[10]

Así las cosas, el 30 de noviembre de 2022, Maldonado Montes radicó una *"Querella"* ante el Foro Primario contra Fastenal, en virtud del proceso sumario de la Ley Número 2 de 17 de octubre de

---

[3] Apéndice del recurso, pág. 104.
[4] *Id.,* pág. 122.
[5] *Id.,* pág. 125.
[6] *Id.,* pág. 119.
[7] *Id.,* pág. 130.
[8] *Id.,* pág. 128.
[9] *Id.,* págs. 139-140.
[10] *Id.,* pág. 156.

1961, 32 LPRA sec. 3118, por razón de despido injustificado y represalias.[11] Arguyó, por tanto, que era acreedor de una mesada ascendente a $19,076.85, además de una suma no menor al 25% en honorarios de abogado. Fastenal presentó su *"Contestación a Querella"* el 19 de diciembre de 2022.[12] El apelado alegó, en síntesis, que Maldonado Montes abandonó su empleo, luego de varios esfuerzos para que este presentara documentos que excusaran su ausencia en su lugar de trabajo.

Luego de varios hechos procesales, que no necesitan ser destacados, Fastenal presentó ante el Foro Primario una *"Solicitud de Sentencia Sumaria"* el 1 de marzo de 2023.[13] En la misma, la apelada planteó los siguientes hechos que, a su entender, no están en controversia:

1. Maldonado comenzó a trabajar el 29 de junio de 2019 en la posición de Sales Support de la empresa Fastenal, que presta servicio de inventario de equipo y herramientas a la manufacturera Thermo King.[14]
2. Antes de trabajar para Fastenal, Maldonado ocupó una posición equivalente en la empresa Wurth, que cesó operaciones en Puerto Rico.[15]
3. Al igual que Fastenal, Wurth se encargaba de proveer el inventario de herramientas que requirieran las operaciones de Thermo King.[16]
4. Cuando Fastenal iba a comenzar sus operaciones para prestar servicios a Thermo King notificó a los empleados de Wurth, quienes de otra forma hubieran quedado cesanteados, que podían solicitar empleo en la compañía entrante si se sometían al proceso de reclutamiento.[17]
5. El proceso de reclutamiento de Fastenal, al cual Maldonado se sometió, incluyó llenar una solicitud de empleo y participar de una entrevista de trabajo.[18]

---

[11] Apéndice del recurso, pág. 25.
[12] *Id.,* pág. 28.
[13] *Id.,* pág. 35.
[14] *Id.,* págs. 97-98.
[15] *Id.,* pág. 147.
[16] *Id.,* pág. 148.
[17] *Id.,* pág. 149.
[18] *Id.*

6. Al finalizar su empleo con Wurth, Maldonado recibió el pago de una mesada a cambio de la firma de un acuerdo de separación y relevo, así como la liquidación de los días acumulados de vacaciones.[19]

7. Las funciones de Maldonado como Sales Support en Fastenal incluían corroborar las órdenes pendientes de clientes, sacar la mercancía pertinente a la orden, despachar la mercancía al cliente, escanear la mercancía una vez llegaba a las góndolas del cliente y luego regresar a los almacenes de Fastenal. Además, Maldonado era responsable de asegurar que el inventario de tornillos y arandelas estuviese suplido.[20]

8. Entre las cualificaciones requeridas para el puesto de Sales Support que ocupó Maldonado se encuentra: tener destreza para la venta de productos, atención al detalle, motivación para servir al cliente, demostrar habilidades para trabajar en equipo, levantar, deslizar, cargar y bajar paquetes que típicamente pesan entre 25 y 50 libras, pero pueden pesar hasta 75 libras.[21]

9. Durante su deposición, Maldonado alegó que el viernes 1 de abril de 2022 se lastimó la espalda con los movimientos que realizó como parte de su trabajo, mientras despachaba cajas y materiales, que pesaban entre 15 y 50 libras.[22]

10. Maldonado comenzó a ausentarse de su empleo en Fastenal desde el siguiente día laborable del accidente de trabajo, el lunes 4 de abril de 2022.[23]

11. El 4 de abril de 2022, Aldo Maldonado solicitó el beneficio del seguro de discapacidad que provee Fastenal a sus empleados, contratado con la compañía The Hartford.[24]

12. El seguro de discapacidad de The Hartford paga el 60% del salario en caso de que un empleado tuviera que ausentarse durante un término prolongado como consecuencia de una lesión corporal accidental, enfermedad física, enfermedad mental, abuso de sustancias o embarazo.[25]

13. El 7 de abril de 2022, la especialista del Departamento de Beneficios de Fastenal, Kelli Wilson, envió a

---

[19] Apéndice del recurso, págs. 150-151.
[20] *Id.,* págs. 99-100.
[21] *Id.,* págs. 98 y 102.
[22] *Id.,* págs. 79 y 102.
[23] *Id.,* pág. 170.
[24] *Id.,* pág. 133.
[25] *Id.,* págs. 133-134.

Maldonado por correo electrónico una carta para orientarle sobre la licencia que provee la Ley de Ausencia Familiar y Médica ("FMLA", por sus siglas en inglés).[26]

14. A través de la carta de Wilson, Fastenal explicó a Maldonado que tenía disponibles 11 semanas de licencia, pero era necesario que presentara un documento de su médico validando la necesidad de ausentarse, las razones médicas relacionadas y el tiempo estimado que estaría fuera de su empleo.[27]

15. La carta de Fastenal de 7 de abril de 2022 advirtió:[28]

> If your medical leave is expected to last more than 30 days and is due to a serious personal illness, the Company will request that you provide a medical provider 'recertification', verifying the continuing need for the leave. Updates from your doctor in writing are needed at the expiration of your current dated letter and it is your responsibility to obtain from your doctor and ensure I have this here.

16. Tras recibir la carta de Fastenal de 7 de abril de 2022, Maldonado envió por mensaje de texto a su supervisor, el gerente de Distrito de Fastenal, Eric Rivera, un Certificado Médico de su médica primaria, la Dra. Mairim Enid Quiles Torres.[29]

17. El Certificado Médico de la Dra. Quiles Torres, fechado al 4 de abril de 2022, indicó que Maldonado estuvo bajo su cuidado médico ese día, y que no podría regresar a sus labores "indefinidamente".[30]

18. El 14 de abril de 2022, Wilson envió por correo electrónico una carta a Maldonado relacionada con la licencia para ausentarse, en que confirmó el recibo de la Certificación Médica de 4 de abril de 2022, y le orientó que tendría que presentar una actualización de ésta, a más tardar, el 4 de mayo de 2022 si necesitaba más tiempo.[31]

19. El 27 de abril de 2002, Wilson envió a Maldonado un recordatorio para que actualizara el certificado médico en o antes de 4 de mayo de 2022, y poder extender así la licencia.[32]

---

[26] Apéndice del recurso, págs. 169-170.
[27] *Id.,* pág. 170.
[28] *Id.*
[29] *Id.,* pág. 172.
[30] *Id.,* págs. 121 y 171.
[31] *Id.,* págs. 180-181.
[32] *Id.,* págs. 119-120.

20. El 3 de mayo de 2022, Maldonado envió a Wilson y a su supervisor, Rivera, una nueva certificación médica.[33]

21. El Certificado Médico de la Dra. Quiles Torres, fechado el 2 de mayo de 2022, precisó que Maldonado podría regresar a sus labores el 1 de junio de 2022.[34]

22. El 3 de mayo de 2022, Wilson contestó al correo electrónico de Maldonado orientándole que, si no le fuera posible regresar a trabajar el 1 de junio de 2022, se necesitaría una actualización del certificado médico.[35]

23. El 5 de mayo de 2022, Maldonado acudió al FSE, ocasión en que reportó que a principios de abril se lastimó la espalda baja como consecuencia del despacho y recibo de mercancía pesada, como parte de sus funciones en Fastenal, y que la lesión estaba irradiándose a la parte superior de la espalda, ocasionándole calambres y ardor.[36]

24. En el Informe Patronal y en el Informe Supletorio ante el FSE se identificó el 2 y el 4 de abril de 2022 como la fecha del accidente laboral.[37]

25. En el FSE constan dos Disposiciones relacionadas a Maldonado con fecha de 5 de mayo de 2022, ambas firmadas por el Dr. Ramos E. Carrillo Torres.[38]

26. Una de las Disposiciones del FSE, la relacionada a un Esguince Lumbosacral, determinó que el empleado lesionado necesitaba descanso hasta el 15 de mayo de 2022, fecha a partir de la cual continuaría con tratamiento mientras trabajaba ("CT").[39]

27. Una de las disposiciones del FSE, la relacionada a un Trastorno Mental, no concedía tiempo de descanso, sino que determinó que Maldonado podía continuar con sus funciones mientras recibía tratamiento.[40]

28. El 9 de mayo de 2022, como parte de los servicios que recibió en el FSE, Maldonado se realizó un MRI del área lumbar de la columna vertebral y unas placas del área lumbosacral que detectaron que tiene cambios degenerativos, principalmente en la parte baja de la espalda, y que incluyen varios discos vertebrales con protuberancias contiguas a los nervios.[41]

---

[33] Apéndice del recurso, págs. 120-121.
[34] *Id.,* pág. 173
[35] *Id.,* pág. 183.
[36] *Id.,* pág. 123.
[37] *Id.,* págs. 264-265.
[38] *Id.,* págs. 174-175.
[39] *Id.,* pág. 174.
[40] *Id.,* pág. 174.
[41] *Id.,* págs. 269-270.

29. Maldonado no regresó a trabajar el 16 de mayo de 2022, fecha en que el FSE indicó que estaba de alta y podía regresar a sus funciones.[42]

30. El 26 de mayo de 2022, Wilson envió dos correos electrónicos para preguntar a Maldonado si entregaría una certificación médica que extendiera su licencia médica, o si regresaría a trabajar el 1 de junio de 2022, fecha en que vencían los 15 días para solicitar la reinstalación conforme la Ley Núm. 45 del FSE, y fecha en que su doctora de cabecera indicó que podría regresar a trabajar.[43]

31. A las indagaciones de Wilson sobre si entregaría una nueva certificación médica o si regresaría a trabajar para el 1 de junio de 2022, Maldonado respondió "[n]o, I will not".[44]

32. Maldonado aseguró que no regresó a trabajar entre el 16 y el 31 de mayo de 2022 porque no se sentía bien y no podía trabajar.[45]

33. Maldonado no se reportó a trabajar el 1 de junio de 2022, fecha en que su doctora de cabecera indicó que éste podría reportarse a su puesto de trabajo, y el empleado tampoco solicitó reinstalación a su empleo.[46]

34. El 1 de junio de 2022, la asistente del gerente de Beneficios de Fastenal, Traci Smith, solicitó a Maldonado que enviara ese día la notificación de su médico extendiendo la licencia médica.[47]

35. Como parte del descubrimiento de prueba, Maldonado entregó una Disposición del FSE que alega se le examinó el 5 de junio de 2022, y que debía continuar en descanso hasta el 20 de junio de 2022.[48]

36. La Disposición del FSE que Maldonado entregó como parte del descubrimiento de prueba no consta en el récord de personal del Querellante en Fastenal, por lo que en la parte inferior del documento se precisa que es "Copia Lesionado". [49]

37. El 7 de junio de 2022, Wilson envió una carta a Maldonado en que resumió que, desde el 2 de mayo de 2022, Fastenal le instruyó a que tenía que presentar una nueva certificación médica si necesitaba días adicionales

---

[42] Apéndice del recurso, pág. 126.
[43] *Id.,* pág. 184.
[44] *Id.,* págs. 126 y 183.
[45] *Id.,* pág. 126.
[46] *Id.,* pág. 126.
[47] *Id.,* pág. 178.
[48] *Id.,* págs. 128, 138 y 185.
[49] *Id.,* págs. 276-277.

de licencia luego de 1 de junio de 2022; y le envió correos electrónicos de seguimiento el 1, 6 y 7 de junio, enfatizando en que aún no se había recibido certificación médica alguna.[50]

38. En la carta de 7 de junio de 2022, Wilson indicó que era necesario se recibiera la certificación médica acreditativa de tiempo adicional de licencia, a más tardar, el 16 de junio de 2022, o de lo contrario, se interpretaría que renunciaba voluntariamente a su puesto, y que esa renuncia sería aceptada. "Es su responsabilidad que yo reciba esa forma de su médico", Anejo 20, Carta de Wilson de 7 de junio de 2022.[51]

39. El 14 de junio de 2022, Wilson envió un nuevo recordatorio a Maldonado para reiterarle que ese día vencía el término para presentar una certificación médica que estableciera la necesidad de extender la licencia, más allá del 1 de junio de 2022.[52]

40. La única contestación que dio Maldonado a las solicitudes de Fastenal para que actualizara su certificado médico fue que no regresaría a trabajar.[53]

41. Fastenal dio de baja a Maldonado efectivo el 14 de junio de 2022, luego de que no se recibiera ninguna comunicación de su parte solicitando reinstalación a su puesto de trabajo antes del 1 de junio de 2022, ni una justificación médica que permitiera extender su ausencia por enfermedad.[54]

42. El 30 de junio de 2022, The Hartford notificó a Maldonado que, para poder procesar su solicitud de beneficio del seguro de incapacidad necesitaban los récords de los médicos que le daban tratamiento.[55]

43. El 1 de julio de 2022, The Hartford solicitó al psiquiatra Hezael Toledo información sobre Maldonado como parte del proceso para evaluar su solicitud de beneficio de seguro de incapacidad.[56]

44. El 29 de julio de 2022, The Hartford denegó la solicitud de seguro de incapacidad que Maldonado presentó el 4 de abril d 2022.[57]

45. El 13 de agosto de 2022, The Hartford informó a Maldonado que había revisado su solicitud de beneficio

---

[50] Apéndice del recurso, pág. 122.
[51] *Id.,* págs. 129 y 176.
[52] *Id.,* pág. 177.
[53] *Id.,* pág. 147.
[54] *Id.,* pág. 76.
[55] *Id.,* págs. 139 y 280.
[56] *Id.,* pág. 139.
[57] *Id.,* pág. 140.

del seguro de incapacidad, y que determinó aprobársele efectivo el 3 de julio de 2022.[58]

46. Maldonado admitió que se le concedió ese beneficio de incapacidad porque no podía trabajar.[59]

47. Para noviembre de 2022, luego de presentada la Querella de epígrafe, Maldonado solicitó el seguro de incapacidad de la SSA, y completó el proceso de solicitud el 30 de diciembre de 2022.[60]

48. En su Solicitud para recibir el beneficio de discapacidad de la SSA, que se somete so pena de perjurio, Maldonado declaró bajo juramento "I became unable to work because of my disabling condition on April 1, 2022".[61]

49. Al explicar a la SSA a qué responde su incapacidad para desempeñar el trabajo que realizaba, en su puño y letra, Maldonado respondió: Me siento bien ansioso todo el tiempo, no me es fácil manejar el estrés, no puedo sentirme presionado, me siento frustrado y nervioso. Me bloqueo con facilidad, se me dificulta seguir tareas (instrucciones). Sufro de cambios de ánimo, cambios de humor, irritabilidad, corajes. Muchas preocupaciones por cualquier cosa, inseguridad a la hora de tomar decisiones. Me siento cansado todo el tiempo y adolorido también. No puedo permanecer mucho tiempo de pie, ni sentado. Sufro de ataques de pánico, mi mente me traiciona. El dolor me limita, ya no tengo la agilidad ni la resistencia de antes.[62]

50. En el Informe de Función que Maldonado presentó a la SSA enumeró que se le dificulta: levantar cosas, agacharse, doblarse, estar de pie, caminar, sentarse, arrodillarse, subir y bajar escaleras, la memoria, completar tareas, concentrarse, el intelecto, seguir instrucciones y llevarse bien con otras personas.[63]

51. El 24 de junio de 2023, la SSA informó a Maldonado que determinó que tiene derecho a los beneficios mensuales por incapacidad, contados retroactivamente a partir de septiembre de 2022.[64]

52. La SSA informó que se adviene en titular de los beneficios a los cinco meses de ocurrir el evento incapacitante, que en su caso fue el 1 de abril de 2022.[65]

---

[58] Apéndice del recurso, pág. 182.
[59] Id., pág. 141.
[60] Id., pág. 77.
[61] Id., págs. 78 y 141.
[62] Id., pág. 291.
[63] Id., pág. 296.
[64] Id., pág. 300.
[65] Id.

53. La SSA determinó que Maldonado está discapacitado, de forma indefinida, por la condición de su espalda baja, ansiedad y depresión, sin que haya un reconocimiento o determinación posterior de que está capacitado para trabajar.[66]

54. Fastenal es una empresa con una política expresa en contra del hostigamiento en el empleo, y exhorta a los empleados a denunciar actos constitutivos de hostigamiento inmediatamente a través de sus supervisores, gerentes o a través del Vicepresidente de Recursos Humanos y al Director de Cumplimiento.[67]

55. Maldonado alega que le comunicó a su supervisor, Eric Rivera, que confrontaba problemas con sus compañeros de trabajo poco antes del 1ro de abril de 2022, día en que comenzó su discapacidad para trabajar, y comenzara a ausentarse.[68]

56. Según Maldonado, sus compañeros le dejaban a él la carga de trabajo, no hacían lo que les correspondía por quedarse conversando; y que esperaban a que él tuviera los despachos casi terminados para hacerse cargo y dejarlo a él a un lado.[69]

57. A Maldonado le consta que, a raíz de su queja, Rivera se reunió con sus compañeros de trabajo.[70]

58. Según Maldonado, luego de que Rivera se reunió con sus compañeros de trabajo, empezó a sentir que se burlaban de él, les incomodaba su presencia, y no lo saludaban ni hablaban con él.[71]

59. Maldonado llevó la alegada nueva situación, que percibe como hostigamiento laboral, ante Rivera, pero al día siguiente de expresar su queja a Rivera, ocurrió el accidente de trabajo por el que empezó a ausentarse y terminó discapacitado.[72]

60. A la fecha en que comenzó a ausentarse, el 1 de abril de 2022, Maldonado no tenía acumulados días por enfermedad ni por vacaciones.[73]

---

[66] Apéndice del recurso, pág. 78.
[67] *Id.,* pág. 195.
[68] *Id.,* págs. 105-108.
[69] *Id.*
[70] *Id.,* pág. 112.
[71] *Id.,* págs. 110-111.
[72] *Id.,* págs. 112-113.
[73] *Id.,* pág. 10.

Para sustentar los hechos anteriormente reseñados, Fastenal adjuntó a su solicitud para que se dicte sentencia sumariamente los siguientes documentos:

1. Deposición realizada a Maldonado Montes el 4 de agosto de 2023 y sus exhibits:[74]
   a. Carta de Fastenal enviada a Maldonado Montes con fecha del 7 y 14 de abril de 2022;
   b. Certificado médico de Maldonado Montes con fecha del 4 de abril de 2022;
   c. Correo electrónico enviado por Fastenal a Maldonado Montes con fecha del 14 de abril de 2022;
   d. Correo electrónico enviado por Fastenal a Maldonado Montes el 3 de mayo de 2022;
   e. Certificado médico de Maldonado Montes con fecha del 5 de mayo de 2022;
   f. Resoluciones del FSE con fecha del 5 de mayo de 2022;
   g. Cartas de Fastenal enviadas a Maldonado Montes con fechas del 1 y 7 de junio de 2022;
   h. Correos electrónicos entre las partes con fecha del 26 de mayo de 2022;
   i. Resolución del FSE con fecha del 7 de junio de 2022;
   j. Correos electrónicos enviados por Fastenal a Maldonado Montes con fechas del 1 y 14 de junio de 2022;
   k. "New Employee Orientation Pack" de Fastenal.
2. Descripción laboral de los empleados en "Sales Support".[75]
3. Mensajes de texto entre Maldonado Montes y un superior en Fastenal.[76]
4. Carta declinando el Long Term Disability de Maldonado Montes con fecha del 29 de julio de 2022.[77]
5. "Informe Patronal" e "Informe Supletorio" sobre el incidente de Maldonado Montes, con fecha del 5 de mayo de 2022.[78]
6. Resultado de MRI y placas de Maldonado Montes.[79]

---

[74] Apéndice del recurso, págs. 60-247.
[75] *Id.,* pág. 248.
[76] *Id.,* pág. 250.
[77] *Id.,* pág. 255.
[78] *Id.,* págs. 264-265.
[79] *Id.,* pág. 269.

7. Declaración Jurada de Eric Rivera, gerente de Fastenal.[80]

8. Carta dirigida a Maldonado Montes el 15 de agosto de 2022, aprobando su Long Term Disability.[81]

9. Solicitud para recibir los beneficios del Seguro Social, de Maldonado Montes.[82]

10. Informe de Función de Maldonado Montes, del 16 de febrero de 2016, para el Seguro Social.[83]

11. Notificación de la aprobación de los beneficios del Seguro Social de Maldonado Montes.[84]

Posteriormente, el 1 de julio de 2024, Maldonado Montes presentó su *"Oposición a Solicitud de Sentencia Sumaria"*.[85] En la misma, el apelante arguyó que había controversia con relación a la aplicación de dos precedentes jurisprudenciales. Además, cuestionó en su oposición si Fastenal violó su derecho a la reserva de empleo, mientras se encontraba en descanso ordenado por el FSE.[86] Por su parte, el 7 de agosto de 2024, Fastenal presentó una *"Réplica a Oposición a Moción de Sentencia Sumaria"*.[87]

Finalmente, el 7 de octubre de 2024, el TPI-Arecibo notificó su *"Sentencia Sumaria"*.[88] Mediante su dictamen, desestimó las reclamaciones de Maldonado Montes en su "Querella". En síntesis, concluyó que el apelante tenía el deber de solicitar la reinstalación a su puesto de trabajo dentro de los quince (15) días que exige la Ley Núm. 45 de 18 de abril de 1935, 11 LPRA sec. 7, posteriores a la culminación de su licencia médica. Así, determinó que el término límite referido había vencido el 30 de mayo de 2022, y no empece a los esfuerzos de la apelada para que este proveyera la documentación médica para extender su licencia, Maldonado Montes *nunca lo hizo*.

---

[80] Apéndice del recurso, pág. 276.
[81] *Id.,* pág. 282.
[82] *Id.,* pág. 283.
[83] *Id.,* pág. 291.
[84] *Id.,* pág. 300.
[85] *Id.,* pág. 303.
[86] Destacamos que de los documentos que obran en autos, no surgen, si alguno, los documentos utilizados por el apelante para sustentar su oposición a la solicitud de sentencia sumaria de Fastenal.
[87] Apéndice del recurso, pág. 326.
[88] *Id.,* pág. 1.

Inconforme con esta determinación, el apelante recurre ante esta Curia, alegando que el Foro Primario incurrió en el siguiente error:

> ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL DESESTIMAR LA QUERELLA MEDIANTE SENTENCIA SUMARIA CUANDO EL APELANTE ESTABA BAJO ORDEN DE DESCANSO ORDENADO POR EL FONDO DEL SEGURO DEL ESTADO AL MOMENTO DEL DESPIDO Y BAJO UN SEGURO DE INCAPACIDAD DE LA COMPAÑÍA DESDE EL 4 DE ABRIL DE 2022.

Mediante *"Resolución"* del 21 de octubre de 2024, concedimos un término a la parte recurrida para que se expresara en cuanto a la apelación de epígrafe. El 18 de noviembre de 2024, Fastenal compareció con su *"Alegato en Oposición a la Apelación"*, quedando así perfeccionado el recurso ante nos. Siendo así, procedemos a resolver.

## II.

### A. Apelación

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *Freire Ruiz de Val v. Morales Román*, 2024 TSPR129, 214 DPR ___

(2024); *González Pagán et al. v. SLG Moret-Brunet,* 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.,* 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

### B. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR ___ (2024); *Birriel Colón v. Econo y otro,* 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023);

*Oriental Bank v. Caballero García,* 212 DPR 671, 678 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335, 350 (2023); *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Cruz, López v. Casa Bella y otros*, supra; *Oriental Bank v. Caballero García,* supra, pág. 678; *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. Reglas 36.1 y 36.2 de Procedimiento Civil, supra.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 979; *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Id.*

La Regla 36.1 de Procedimiento Civil, supra, antes mencionada, reconoce que una parte que solicite un remedio puede presentar una solicitud de sentencia sumaria "en cualquier momento después de haber transcurrido veinte (20) días a partir de la fecha en que se emplaza a la parte demandada, o después que la

parte contraria le haya notificado una moción de sentencia sumaria, pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba".

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, supra; *Oriental Bank v. Caballero García,* supra, pág. 679; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

En particular, la Regla 36 de Procedimiento Civil, supra, permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no

existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 310 (2013).

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros*, supra; *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". Id. No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros,* supra, pág. 472.

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, *quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente* puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, *si la misma procede en derecho*. Id. Es decir, el hecho de no oponer a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión,* supra*,* pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. Id. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. Id. De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, supra, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Por otro lado, y relevante al caso de autos, la Regla 36.6 de Procedimiento Civil, supra, establece que una parte que se oponga a una moción de sentencia sumaria que no cuente con la documentación o evidencia necesaria para así hacerlo, puede presentar una declaración jurada. En este documento, deberá exponer las razones por las que se le imposibilita evidenciar los hechos esenciales que justifican su oposición. Por ello, en casos como estos, el Foro Primario puede, discrecionalmente, denegar o posponer el ejercicio de considerar la solicitud de sentencia sumaria, hasta tanto culmine el descubrimiento de prueba. *García Rivera et al. v. Enríquez,* 153 DPR 323, 340 (2001); *Pérez v. El Vocero de P.R.,* 149 DPR 427, 449-450 (1999).

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda

surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *E.L.A. v. Cole*, supra, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.
>
> *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *Cruz, López v. Casa Bella y otros*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281,

291 (2019). Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho.

### C. Ley del Sistema de Compensaciones por Accidentes del Trabajo

La Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Número 45 de 18 de abril de 1935, en adelante, Ley Núm. 45, 11 LPRA sec. 1 et seq. es una legislación de carácter remedial en la cual se consagras las garantías y beneficios del obrero que sufre un accidente o enfermedad ocupacional en el escenario del trabajo. *González v. Multitiendas*, 165 DPR 873, 881 (2005); *Lebrón Bonilla v. ELA*, 155 DPR 475, 482 (2001); *Rivera* v. *Blanco Vélez Stores,* 155 DPR 460, 466 (2001).

Para gozar de los mismos, es necesario que el empleado haya experimentado un accidente, o sufra una condición como resultado directo de un acto o función inherente al sus labores, o que haya ocurrido en el curso de este. Ley Núm. 45, supra, sec. 2. De lo contrario, el accidente o la condición no pueden catalogarse como ocupacional y por tanto no es compensable bajo la mencionada Ley. *González v. Multitiendas,* supra; *Díaz Ortiz v. F.S.E.,* 126 DPR 367, 376. (1990).

En lo aquí pertinente, el Artículo de la precitada Ley, dispone lo siguiente:

> En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

1. ***Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta o fuere autorizado a trabajar con derecho a tratamiento***, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce (12) meses desde la fecha del accidente, o seis (6) meses en el caso de patrono con quince (15) empleados o menos a la fecha del accidente;

2.  Que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y

3. Que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)

Ley Núm. 45, supra, sec. 7.

(Énfasis nuestro)

En síntesis, esta legislación busca armonizar los derechos tanto del obrero como del patrono, en la medida en que le garantiza al empleado lesionado ciertas salvaguardas dentro de su trabajo, y protege, por su parte, los intereses pecuniarios del patrono. De esta forma, también pretende prevenir la actuación injustificada en contra del obrero lesionado en el ámbito laboral, sin imponerle una carga irrazonable al patrono.

Despedir a un empleado por razón de su incapacidad física y/o mental para realizar las funciones de su puesto, o para asistir regularmente a su empleo, no se justifica en los casos en que el

obrero se incapacita temporalmente por razón de un accidente o una enfermedad ocupacional. *Cuevas v. Ethicon Div. of J&J Prof. Co.*, 148 DPR 839, 845 (1999). A través de la Ley de Compensaciones por Accidentes del Trabajo se viabiliza una herramienta que reconoce el derecho constitucional de los trabajadores en Puerto Rico a recibir protección contra riesgos en su salud e integridad personal. *Torres v. Star Kist Caribe, Inc.*, 134 DPR 1024, 1028-1029 (1994). Esto a través de un sistema de seguridad social de lesiones en el empleo. Ley Núm. 45, supra, sec. 1a. Conforme la Ley, el patrono está obligado a reservarle el empleo a un obrero que sufre inhabilidad para trabajar, consecuencia de un accidente o enfermedad relacionada al trabajo. El empleo reservado es aquel que el obrero tenía al momento de ocurrir el accidente o enfermedad.

La reserva del empleo tiene un término de caducidad de doce (12) meses, o trescientos sesenta (360) días a partir de ese mismo momento. *Rivera v. Blanco Vélez Stores*, supra, 468-469. Este periodo transcurre desde la fecha del accidente y no desde que el FSE ordene el descanso. *Cuevas v. Ethicon Div. of J&J Prof. Co.*, supra, págs. 850-851. La solicitud de reinstalación tiene que hacerse dentro de los doce (12) meses a partir de la fecha cuando ocurrió el accidente o la enfermedad laboral. Este término busca establecer un balance entre los derechos del patrono y los del empleado lesionado. *Torres v. Star Kist Caribe, Inc.*, supra, pág. 1033. Lo cierto es que el estatuto en cuestión "no tuvo la intención de establecer una obligación al patrono de reservar el empleo del obrero indefinidamente." *Id.*

También es importante destacar que la reinstalación estará sujeta, entre otras cosas, a que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta o fuere autorizado a trabajar con

derecho a tratamiento, y *siempre y cuando que dicho requerimiento no se haga después de transcurridos doce (12) meses desde la fecha del accidente*, o seis (6) meses en el caso de patronos con quince (15) empleados o menos a la fecha del accidente. Ley Núm. 45, supra, sec. 7; *WhittenBurg v. Col. Ntra. Sra. Del Carmen,* 182 DPR 937, 970-972 (2011); *Rivera v. Blanco Vélez Stores*, supra, pág. 469. (Énfasis suplido).

"[S]i el empleado no solicita reinstalación dentro de los términos contemplados en la Ley de Compensaciones y el patrono lo despide, la cesantía no configura un despido injustificado ya que la propia ley lo contempla como una prerrogativa del patrono ante la ausencia de una oportuna solicitud de reinstalación al puesto que ocupaba el obrero lesionado". *Rivera v. Blanco Vélez Stores, supra,* pág. 469.

### D. Despido Injustificado

La Ley Núm. 80, supra, fue aprobada para proveerle protección a los derechos de los trabajadores, mediante un estatuto reparador que, junto a la propulsión de remedios justicieros y consubstanciales con los daños causados por un despido injustificado, busca desalentar la incidencia del despido injustificado, arbitrario o caprichoso. *Ruiz Mattei v. Comercial Equipment,* 2024 TSPR 68, 213 DPR ___ (2024); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019); *SLG Zapata–Rivera v. J.F. Montalvo,* 189 DPR 414, 424 (2013).

La Ley Núm. 80, supra, forma parte de la colección de legislación protectora del trabajo. Tiene precedentes en la Ley Núm. 48 de 28 de abril de 1930, la cual establecía que todo empleado por tiempo indefinido, si era despedido sin justa causa, tenía derecho a una compensación equivalente a la medida o frecuencia en la que recibía la paga por su trabajo, fuera esta semanal o quincenal. Este

cuerpo estatutario fue luego enmendado por la Ley Núm. 50 de 20 de abril de 1949. Finalmente, esta última ley fue sustituida por la Ley Núm. 80, la cual, a pesar de sus múltiples enmiendas, continúa hoy vigente.

Es por ello que el Artículo 1 de la Ley Núm. 80, supra, sec. 185a, establece que un empleado que: (1) esté contratado sin tiempo determinado; (2) reciba una remuneración, y (3) sea despedido de su cargo sin que haya mediado justa causa, tiene derecho al pago de una indemnización por parte de su patrono, además del sueldo devengado, conocido comúnmente como la mesada.

### III.

Maldonado Montes recurre ante esta Curia, solicitando que revoquemos la Sentencia Sumaria dictada en su contra por el TPI-Arecibo. En su dictamen, el Foro Apelado desestimó la "Querella" presentada por el apelante contra Fastenal, por despido injustificado y represalias. Alegó que fue un error desestimar su causa de acción, mediante sentencia sumaria, ya que al momento de su despido, se encontraba en descanso ordenado por el FSE. *No le asiste razón.*

Según la última documentación médica que recibió Fastenal el apelante podría comenzar a laborar luego del 15 de mayo de 2022. Como previamente reseñamos, en el expediente obra evidencia sustancial que demuestra la diligencia de Fastenal, con relación a la comunicación con Maldonado Montes, luego que este dejara de comparecer a su empleo. La apelada estuvo comunicándose constantemente con el apelante, solicitando que se le enviaran las certificaciones médicas necesarias para justificar la licencia médica de Maldonado Montes, para poder así reservar su empleo. Surge, incluso, que se le instruyó enviar esta documentación en o antes del

14 de junio de 2022, pues de no hacerlo, Fastenal recibiría la misma como una renuncia tácita y voluntaria de su parte.

No obra evidencia en autos, ni en la deposición de Maldonado Matos, que este le haya evidenciado a Fastenal el descanso en el que se encontraba ordenado por el FSE. El apelante se limitó a decir, tanto en la deposición que se le realizó, como en su recurso, que el entendía que el FSE le haría llegar esa documentación a Fastenal. Aun si esto último fuese cierto, los múltiples correos electrónicos de la apelada, solicitándole los documentos que alegadamente serían enviados por el FSE, debió ser indicio de que Fastenal, en efecto, no contaba con la determinación del FSE.

Lo cierto es que durante este proceso, el apelante no fue diligente. Sin embargo, la prueba nos convence que Fastenal sí lo fue. La apelada reservó el empleo de Maldonado Montes, en cumplimiento con los términos que establece la Ley Núm. 45, supra. De hecho, le dio más de los quince (15) días que estatutariamente estaba compelido a otorgarle al apelante.

La documentación que obraba en el expediente de Maldonado Montes en Fastenal, este podía regresar a trabajar para el 15 de mayo de 2022. Por eso, transcurrida esta fecha sin que el apelante compareciera a su empleo, la apelada se estuvo comunicando con este, con la intención de obtener la documentación necesaria para reservar su empleo. *El apelante incumplió.* Además, no pudo controvertir la alegación de Fastenal, en cuanto a que nunca fue notificada del descanso ordenado por el FSE. Por ello, transcurrido el tiempo necesario para reservar el empleo, y no estando obligado a reservar indefinidamente el mismo, Fastenal procedió con el despido, conforme a la Ley.

Por último, luego de una sosegada evaluación del expediente que nos ocupa, de la solicitud de sentencia sumaria de la apelada, y la revisión de *novo* sobre la misma, *lo cual en derecho nos*

*corresponde*, hemos podido constatar que las determinaciones de hechos y derecho realizadas por el TPI-Arecibo en su *"Sentencia"* se sustentan con los documentos presentados por estas. A su vez, entendemos que el apelante no pudo controvertir los hechos, expuestos y probados, por la aquí apelada. En mérito de lo antes expuesto, sostenemos el dictamen apelado en toda su extensión.

**IV.**

Por los fundamentos antes expuestos, *confirmamos la "Sentencia Sumaria" apelada.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones